# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KARLA M.,

       *Plaintiff,*

  vs.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

       *Defendant.*

Case No. 2:21-cv-02528-EFM

## MEMORANDUM AND ORDER

Plaintiff Karla M. brings this action seeking review of the final decision by Defendant, the Acting Commissioner of Social Security ("Commissioner") denying her application for disability benefits for the period between June 1, 2017, and January 4, 2020, under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.  Plaintiff alleges that the administrative law judge ("ALJ") erred in (1) failing to perform a function-by-function analysis of Plaintiff's physical limitations; (2) failing to comply with SSR 96-8p's requirement that the ALJ explain and resolve any material inconsistencies or ambiguities between the Plaintiff's residual functional capacity ("RFC") and the medical opinions relied upon; (3) failing to meet the requisite burden at step five of the disability evaluation process; and (4) failing to address the supportability of three of the medical opinions discussed in the ALJ's decision.  Because the Court concludes that the ALJ did not explain and

resolve the inconsistency between Dr. Neufeld's testimony and Plaintiff's RFC, the Court reverses and remands the Commissioner's judgment.

## I.      Factual and Procedural Background

Plaintiff is a fifty-seven-year-old woman with various physical and mental impairments. The parties do not dispute the specifics of Plaintiff's impairments.

On November 15, 2018, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act to begin retroactively on June 1, 2017 (the amended onset of disability date). That claim was denied twice. Plaintiff appealed those denials to an ALJ.

Ultimately, the ALJ issued a partially favorable decision to Plaintiff, holding that Plaintiff became disabled on January 4, 2020, the date Plaintiff turned 55. Relevant to this appeal is the ALJ's treatment of several medical opinions from physicians about Plaintiff's limitations. First and foremost, Dr. Jason Neufeld examined Plaintiff in August 2019. Dr. Neufeld opined that Plaintiff "remained capable of following one to two step instructions consistently over the course of a 40-hour workweek. Her capacity for three or more step instructions appeared compromised." The ALJ found Dr. Neufeld's opinion regarding Plaintiff's mental capacity persuasive and properly supported. When deciding Plaintiff's residual functional capacity ("RFC"), the ALJ did not include the limitation to one-to-two step instructions. Furthermore, the ALJ did not explain why he failed to include this limitation.

The ALJ also relied upon medical opinions by Dr. Pravin Sampat, Dr. Jan Hunter, and Dr. Robert Hughes. Finding their opinions persuasive, the ALJ nevertheless did not discuss the supportability of their opinions except to mention that Dr. Hughes's opinion that Plaintiff should be limited in exposure to heat and cold was not supported.

After reviewing the record of Plaintiff's doctor visits, the ALJ held a telephone hearing at which he heard statements from Plaintiff and a vocational expert ("VE"). Part of the VE's testimony dealt with whether there were jobs Plaintiff could have performed after June 1, 2017. The VE's testified in response to a hypothetical proposed by the ALJ, which copied the ALJ's assessment of Plaintiff's RFC nearly verbatim. The Plaintiff's RFC stated that Plaintiff was limited to:

> [L]ight work; no climbing ladders, ropes, scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl; frequently reach overhead with the right upper extremity; frequently handle and finger with the right upper extremity; no exposure to unusual hazards defined in SSR 96-9p as moving mechanical parts, equipment, tools, machinery; electric shock; high, exposed places; radiation; explosives; toxic caustic chemicals; carry out *detailed but uninvolved instructions for simple, repetitive, routine tasks*; no fast-paced production requirements; make simple, work-related decisions with few, if any, workplace changes.[1]

Based on this assessment of the Plaintiff's RFC, the VE testified that there were three jobs Plaintiff could perform: cafeteria attendant, price marker, and routing clerk. Each of these positions required GED reasoning level two. Relying on the VE's testimony, the ALJ found that Plaintiff could have performed these jobs during the period between June 1, 2017, and January 4, 2020. Therefore, the ALJ found that Plaintiff was not disabled during that period. The ALJ did find, however, that Plaintiff became disabled upon turning 55.

Plaintiff appealed this decision to the Appeals Council, a request which the Council denied. Therefore, the ALJ's decision is the final agency decision for the purposes of judicial review. Plaintiff applied for judicial review of the ALJ's decision on November 11. 2021, arguing that the ALJ committed both legal and factual errors in determining Plaintiff's RFC, thereby rendering the

---

[1] Emphasis added.

VE's testimony irrelevant and failing to meet the Commissioner's burden at step five in the review process.  According to Plaintiff, the ALJ committed legal error by failing to first articulate his function-by-function analysis of the Plaintiff's limitations before stating her exertional level.  Furthermore, Plaintiff argues that the ALJ failed to comply with SSR 96-8p.  Finally, Plaintiff argues that the ALJ's failure to discuss the supportability of Dr. Sampat, Dr. Hunter, and Dr. Hughes's medical opinions constitutes reversible error.

## II.      Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act, which provides that the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive.[2]  The Court must therefore determine whether the Commissioner's factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard.[3]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[4]  The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is disabled under the Act only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[6]  This impairment "must be severe enough that she is unable to perform her past relevant work, and

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[7]  The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8]  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments.[10]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[11]

After assessing the claimant's RFC, the ALJ continues to steps four and five, which require the ALJ to determine whether the claimant can perform her past relevant work, and if not, then whether she can generally perform other work that exists in the national economy.[12]  The claimant bears the burden in steps one through four to prove a disability that prevents the performance of

---

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002); 20 C.F.R. § 416.920 (2005)).

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[9] *Barkley*, 2010 WL 3001753, at *2.

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[12] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

her past relevant work.[13]   The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other work in the national economy.[14]

### III.   Analysis

The primary issue before this Court is whether the ALJ's determination that Plaintiff was not disabled prior to January 4, 2020, is based on correct legal standards and substantial evidence.

### A.   The ALJ properly assessed Plaintiff's limitations on a function-by-function basis prior to assessing her exertional level.

Plaintiff first asserts that the ALJ's assessment of her RFC was legally flawed.  She argues that the ALJ was required to first identify her functional limitations on a function-by-function basis prior to expressing her RFC in exertional terms.  In response, the Commissioner argues that any error resulting from not articulating a function-by-function analysis prior to stating Plaintiff's exertional level is harmless and not reversible error.

SSR 96-8p paragraph 4 states:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

This function by function assessment is relevant to both step four and step five of the sequential evaluation process.[15]   At step four, "the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she

---

[13] *Lax*, 489 F.3d at 1084.

[14] *Id.*

[15] *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014)

actually performed it."[16]  If the ALJ determines that a claimant "can return to his past work," then "a function by function analysis may be even more important" to the outcome of the case.[17]  Where the ALJ holds that a claimant could not perform his or her past work, a function-by-function analysis at step four is irrelevant.[18]

For example, in *Hendron*, the Tenth Circuit found an ALJ's failure to discuss the claimant's abilities on a function-by-function basis irrelevant at step four because the ALJ had already found that the claimant was incapable of doing such work.[19]  At step five, the claimant had argued that the ALJ's failure to do a function-by-function assessment resulted in him improperly overlooking her inability to sit for long periods.[20]  However, the Tenth Circuit determined that this failure "was not critical to the outcome of this case."[21]  That is because in the body of his opinion, the ALJ had found that the evidence did not support a limitation on the claimant's ability to sit.[22]  Therefore, failure to include a function by function assessment was not reversible error.[23]

As another example, the claimant in *Bennett v. Berryhill* argued legal error based on the ALJ's failure to perform a function-by-function analysis.[24]  As in *Hendron*, the court held that

---

[16] SSR 96–8p, 1996 WL 374184, at *3.

[17] *Hodgson v. Colvin*, 2014 WL 5511077, at *4 (D. Kan. 2014).

[18] *Hendron*, 767 F.3d at 956.

[19] *Id.*; *see also Sewell v. Comm'r, SSA*, 2021 WL 3871888, at *3 (10th Cir. Aug. 31, 2021), *cert. denied sub nom. Sewell v. Kijakazi*, 142 S. Ct. 899 (2022) ("But the ALJ found in Sewell's favor on the past relevant work question [that no past work could be performed], so any failure to follow SSR 96-8p was immaterial.").

[20] *Hendron*, 767 F.3d at 956–57.

[21] *Id.* at 957.

[22] *Id.*

[23] *Id.*; *see also Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense . . . . [W]e cannot insist on technical perfection.").

[24] *Bennett v. Berryhill*, 2018 WL 6267767, at *7 (D. Kan. 2018).

where the ALJ had found that the claimant could not perform any of their past work, the function-by-function analysis was irrelevant at step four.[25]  At step five, the court held that "[w]here it is clear that the ALJ considered the functions, the Tenth Circuit does not require separate discussion of each one."[26]  Although the ALJ had first stated his conclusion that the claimant had the RFC to perform light work, he also thoroughly "discussed evidence regarding plaintiff's ability to walk, stand, sit, lift, carry and push" in the body of his report.[27]  Therefore, the court held that "[t]he ALJ's decision to structure his decision by stating his conclusion first and then explaining his reasoning is not error."[28]

From these cases, the apparent purpose of the function-by-function analysis is to prevent the ALJ from overlooking "restrictions necessary to accommodate [a claimant]'s . . . limitations."[29]  When the record indicates that the ALJ considered all relevant restrictions, a function-by-function analysis is not required.[30]

In the present case, the ALJ held in favor of Plaintiff at step four by determining that she could not perform her past work.  Therefore, a function-by-function analysis at step four is

---

[25] *Id.* at *8.

[26] *Id.*

[27] *Id.*

[28] *Id.*; *see also William Edward S. v. Saul*, 2020 WL 569806, at *4 (D. Kan. 2020) ("While Plaintiff is correct that Social Security Ruling (SSR) 96-8p requires an ALJ to assess an individual's functional limitations on a function-by-function basis before deciding the exertional level of work of which the individual is capable—sedentary, light, medium, heavy, or very heavy—that does not impose an artificial duty to express the exertional level he has assessed only after he has stated in the decision the individual functional limitations.  The requirement is that an ALJ assess a claimant's individual functional limitations and *then* determine, based on those limitations, the exertional level of which the claimant is capable.") (emphasis in original); *compare with Ruben M. v. Kijakazi*, 2022 WL 457796, at *3 (D. Kan. 2022) (reversing ALJ's decision when no evidence that ALJ considered claimant's functional abilities before determining RFC).

[29] *Patterson v. Colvin*, 662 F. App'x 634, 638 (10th Cir. 2016).

[30] *Id.*

immaterial to whether the ALJ properly reviewed her appeal. Failure to include one here does not constitute reversable error.

Regarding step five, Plaintiff's only real argument is that the ALJ did not first list his function-by-function analysis of Plaintiff's ability to "walk, stand, sit, push, and pull" prior to determining in Plaintiff's RFC that she could perform "light work." However, that is a mere technical argument in this case because the ALJ did consider Plaintiff's ability to walk, stand, and sit later in his decision. The record shows that the ALJ relied on Dr. Dominick's "opinion that the claimant could sit, stand or walk a full workday" by finding that opinion "is consistent with physical examinations that note that the claimant had a normal gait, did not use an assistive device and had normal range of motion and strength in lower extremities." The ALJ went on to describe the limitations that *did* apply to Plaintiff in detail, showing a function-by-function analysis in the body of his decision. Although the ALJ did not specifically address Plaintiff's ability to push and pull, he did discuss her ability to lift and carry as well as her grip strength, which shows an analysis of those necessary functions. The mere fact that the ALJ did not start with the analysis before stating the RFC does not show that he failed to first consider that analysis before arriving at his conclusion.

In her reply, Plaintiff's main retort is that the ALJ should have concluded "that an individual with 'severe' aortic valve replacement with empirical anti-coagulation and obesity" must necessarily have limitations to walking, sitting, and standing. This appears to be an argument that ALJ's determination was not supported by substantial evidence. The Court disagrees. From the record, the ALJ clearly considered Dr. Dominick's opinion regarding Plaintiff's physical capabilities, Plaintiff's testimony, and the overall record. His decision that Plaintiff could sit, stand, and walk for a full work day is consistent with the uncontroverted evidence. Rather, it is

Plaintiff who cannot point to one scintilla of evidence that she cannot sit, stand, or walk for a full workday.

Even if the ALJ had failed to consider Plaintiff's ability to sit, stand, walk, push, or pull, there is no reversible error here because Plaintiff does not show how that failure would be critical to the outcome of this case.  Plaintiff does not even directly allege, must less cite to the evidence for support, that she has any sort of limitation when it comes to sitting, standing, walking, pushing, or pulling.  Instead, she relies on a per se argument that any failure to consider and explicitly state the function-by-function analysis prior to stating the RFC level mandates reversal.  Under Tenth Circuit precedent, this is simply not true.  Therefore, the Court declines to grant reversal of the ALJ's decision for this reason.

**B.      The ALJ's failed to comply with SSR 96-8p.**

Plaintiff asserts under this provision that the ALJ's acceptance of Dr. Neufeld's opinion that Plaintiff should be limited to 1-2 step instructions, when contrasted with his failure to limit Plaintiff to 1-2 instructions in the RFC, creates a material inconsistency.  The Commissioner disagrees, arguing that there is no material inconsistency because the RFC's limitation to "detailed uninvolved instructions" is more or less equivalent to "1–2 step instructions."  In the alternative, the Commissioner asks the Court to find that any failure to reconcile the RFC with Dr. Neufeld's opinion is harmless error.

*1.      A conflict necessarily exists between "detailed uninvolved instructions" and "one-to-two step instructions."*

Plaintiff cites to much caselaw dealing with the issue of whether the claimant's RFC containing a limitation to "simple instructions" is consistent with level-two reasoning jobs considered by the VE.  That is not the issue here.  In fact, whether Plaintiff's RFC is inconsistent

with the jobs provided by the VE is not before the Court.  Rather, the issue is whether there is a material inconsistency between Dr. Neufeld's opinion that Plaintiff should be limited to one-to-two step instructions and her RFC limiting her to "detailed uninvolved instructions in the performance of simple, routine and repetitive tasks."

Similarly off-topic, Commissioner cites to *Kathleen B. v. Saul* to support his contention that "simple work" equivalates to one-to-two step instructions.[31]  That case did not involve an RFC limitation to "detailed uninvolved instructions."[32]  This specific language creates a conflict with a limitation to one-to-step instructions, as demonstrated by the GED reasoning level definitions.  In fact, the medical opinions at issue in *Kathleen B.* differentiated within themselves between "detailed" instructions and "simple" instruction.[33]  Therefore, *Kathleen B.* is inapplicable to this case.

"An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability"—at least not without revealing the reasons behind that decision.[34]  Instead, SSR 96-8p requires the ALJ to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."[35]  "If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted."[36]  An RFC conflicts with a medical opinion when

---

[31] *See* 2020 WL 3076598, at *6 (D. Kan. 2020).

[32] *See id.*

[33] *Id.* (discussing how several doctors' opinions were saying the same thing just phrasing it differently, with one of the physician's explicitly distinguishing between detailed and simple instructions).

[34] *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

[35] 1996 WL 374184, at *7.

[36] *M.H. v. Saul*, 2020 WL 916856, at *4 (D. Kan. 2020); *see also Wilson v. Colvin*, 541 F. App'x 869, 873–74 (10th Cir. 2013) ("We therefore agree with Ms. Wilson that the ALJ's RFC, as stated in the decision, is not generally

it expressly adopts specific restrictions within that opinion while leaving out others without comment.[37]   Therefore, the question is whether Plaintiff's RFC is inconsistent with Dr. Neufeld's opinion that Plaintiff should be limited to one-to-two step instructions.[38]

In a case highly analogous to this case, the ALJ found an examining doctor's opinion that the claimant should be limited to "one to two step instructions" persuasive.[39]   The ALJ, however, failed to include that limitation in the RFC, instead limiting the claimant to "simple, routine, and repetitive tasks."[40]   The court upon reviewing the ALJ's decision found that "the ALJ clearly adopted all of Dr. McMaster's opinions except the one to two step limitation."[41]   This resulted in a conflict between the doctor's opinion and the RFC.[42]   Relying upon the Dictionary of Occupational Titles ("DOT"), the court held that a limitation to "detailed but uninvolved" instructions (the definition of GED reasoning level two) was not equivalent to "one-to-two step instructions" (the definition of GED reasoning level one).[43]   Therefore, failure to include the one-to-two step limitation in the RFC created a conflict which the ALJ failed to explain.[44]

---

consistent with Dr. LaGrand's medical opinion, and the ALJ's failure to weigh that opinion and explain why he accepted some, but not all, of its moderate restrictions, was not harmless error.").

[37] *Haga*, 482 F.3d at 1207–08.

[38] *See, e.g.*, *Monique M. v. Saul*, 2020 WL 5819659, at *8 (D. Kan., 2020) ("Moreover, as quoted above, the court in Wilson found the RFC was inconsistent with Dr. LaGrand's opinion whereas this court finds the RFC assessed here is not inconsistent with Dr. Schultz's opinion regarding migraines."); *Sullivan v. Colvin*, 519 F. App'x 985, 988–89 (10th Cir. 2013) (holding that RFC was not inconsistent with medical opinion but merely stated the issue differently).

[39] *M.H.*, 2020 WL 916856, at *4.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at *5; *see also* DOT, Appendix C, Components of the Definition Trailer, 1991 WL 688702 (4th ed. rev. 1991) (listing definitions of GED reasoning levels); *see also C.P. v. Saul*, 2020 WL 6544582, at *6 (D. Kan. 2020) ("The plain language of the DOT suggests that a limitation to one-to-two-step instructions conflicts with the requirements for jobs requiring level two reasoning.").

[44] *See M.H.*, 2020 WL 916856, at *5.

Here, the ALJ's express instructions copy the GED reasoning level two standard nearly verbatim by providing that Plaintiff should be limited to "detailed uninvolved instructions in the performance of simple, routine and repetitive tasks."  In contrast, Dr. Neufeld's opinion echoes the GED reasoning level one definition by confining Plaintiff to one-to-two step instructions. Facially, this creates a conflict, especially when the ALJ found that Dr. Neufeld's opinion on this subject was persuasive and well supported by the evidence.  The ALJ did not explain this conflict as required by SSR 96-8p.  Therefore, the ALJ erred.  Whether this warrants remand depends on whether the ALJ's error was harmless.

  2.  *The ALJ's failure to explain the conflict between Dr. Neufeld's opinion and Plaintiff's RFC is not harmless error.*

Even when a ALJ errs in his decision, courts will not reverse the decision if the error was harmless.[45]  Failure to include a limitation in the hypothetical presented to the VE without explanation is not harmless because the VE's testimony only constitutes evidence insofar as the hypothetical is accurate.[46]  Accordingly, "when a hypothetical does not contain limitations and restrictions which should have been included therein, such hypothetical does not constitute substantial evidence and the ALJ may not rely on the VE testimony to conclude that significant number of jobs are available to the plaintiff in the national economy."[47]  Therefore, failure to

[45] *Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 842 (10th Cir. 2020) ("We agree with the Commissioner that a remand is not necessary here because Trujillo fails to show that any error was harmful.").

[46] *See M.H.*, 2020 WL 916856, at *5 ("Clearly, had the one to two step limitation been included in Plaintiff's RFC, there would be an apparent conflict between the vocational expert's testimony and the DOT.").

[47] *Heiman v. Barnhart*, 2004 WL 1459239, at *16 (D. Kan. 2004), report and recommendation adopted, 2004 WL 1088364 (D. Kan. Apr. 14, 2004).

-13-

resolve conflicts between a medical opinion relied on by the ALJ and a claimant's RFC typically results in reversible error.[48]

There is only way the Commissioner can show that the ALJ's failure to include the one-to-two step instruction limitation is harmless.  He must prove that the VE discussed at least one job which exists in the national economy in significant numbers that requires only one-to-two step instructions.[49]  Basically, the court must determine whether the Commissioner has met his burden under step five despite the conflict.  As the Commissioner bears the burden to prove that viable jobs exist in the national economy in significant numbers, it follows that the burdens remains on the Commissioner to prove that the jobs listed by the VE involve solely one-to-two step instructions.

In the present case, the Commissioner has failed to do so.  Although the ALJ opinion itself does not discuss the GED reasoning level required by the cafeteria attendant, price marker, and routing clerk positions, each requires a GED reasoning level two—the same "detailed and uninvolved instructions" requirement as Plaintiff's RFC.  None of them are GED reasoning level one jobs, which require only one-to-two step instructions.  Therefore, it follows that the jobs provided by the VE would involve detailed uninvolved instructions *not* one-to-two step instructions.  Furthermore, the VE did not in her testimony address the type of instructions required by those positions.  Finally, the Commissioner here does not even attempt to argue that any of the positions listed by the VE involve solely one-to-two step instructions.  Instead, the Commissioner

---

[48] *See M.H.*, 2020 WL 916856, at *5. *But see White v. Kijakazi*, 2022 WL 1120517 (D. Kan. 2022) (holding that failure to include one-to-two step limitations was harmless because one of the jobs listed by the VE was at that skill level and existed in the national economy in significant numbers).

[49] *See White*, 2022 WL 1120517, at *8 (citing *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016); *see also Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (upholding ALJ decision when only one of the three jobs discussed by VE did not conflict with claimant's RFC).

attempts to put the burden on Plaintiff to prove that she cannot perform these positions.  That is not the law.  Under the facts and law present here, it is the Commissioner's burden to prove the existence of jobs with the one-to-two step limitation to show harmless error.  The Commissioner's failure to do so means that substantial evidence does not support the ALJ's decision.  Therefore, the case must be remanded to allow the ALJ to explain the conflict between Dr. Neufeld's opinion and the RFC or to allow the VE to provide a list of jobs requiring solely one-to-two step instructions.

**C.      The Commissioner failed to meet his burden at step five.**

As discussed above, the harmless error analysis aligns closely with whether the Commissioner met his burden at step five in the sequential evaluation.  That analysis has been performed above, revealing that substantial evidence does not show that Plaintiff could have performed other work in the national economy between June 1, 2017, and January 4, 2020.  Whether this is phrased as a harmful error in or the Commissioner's failure to carry his burden at step five, the result is the same.  Remand is necessary in this case.

**D.      On remand, the ALJ must comply with 20 C.F.R. § 404.1520c by discussing the supportability of all medical opinions relied upon.**

In pursuit of her request for reversal, Plaintiff also argues that the ALJ did not properly evaluate the supportability of Dr. Sampat, Dr. Hunter, and Dr. Hughes's prior administrative medical findings under 20 C.F.R. § 404.1520c.  The Court notes that at least the Eighth Circuit has held that failure to address the supportability or consistency of a medical opinion warrants automatic remand or reversal.[50]  Although the Tenth Circuit has not directly addressed this issue,

---

[50] *See, e.g.*, *Bonnett v. Kijakazi*, 859 F. App'x. 19, 20 (8th Cir. 2021).

the Court sees no reason that it would hold contrary to the Eighth Circuit here.[51]  Therefore, the ALJ would do well to discuss the supportability of each medical opinion it considers on remand to avoid further litigation on this issue.

      **IT IS THEREFORE ORDERED** that that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

      **IT IS SO ORDERED.**

Dated this 30thth day of SEPTEMBER, 2022.

This case is closed.

*Eric F Melgren*

ERIC F. MELGREN
CHIEF UNITED STAES DISTRICT JUDGE

---

[51] *See, e.g.*, *J.M.P. v. Kijakazi*, 2022 WL 2271879, at *6 (D. Kan. June 23, 2022) ("The ALJ's decision also shows he considered the supportability of other medical evidence and found Joseph's opinion to be partially persuasive. By doing so, the ALJ complied with the requirement to 'articulate ... how persuasive' he found 'all of the medical opinions and all of the prior administrative medical findings[.]' He explained how he considered the most important factors—the 'supportability' and 'consistency' factors—in evaluating medical opinions. *Thus, the ALJ followed the law, and his decision shows it is supported by substantial evidence*.") (further citations omitted) (emphasis added).